**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1432-15T3

WALLACE BROS., INC.,

    Plaintiff-Respondent,

v.

EAST BRUNSWICK BOARD OF
EDUCATION,

    Defendant-Appellant.

_____

          Argued October 11, 2017 — Decided November 9, 2017

          Before Judges Fuentes, Koblitz and Manahan.

          On appeal from Superior Court of New Jersey,
          Law Division, Middlesex County, Docket No. L-
          1605-14.

          Anthony P. Seijas argued the cause for
          appellant (Cleary Giacobbe Alfieri Jacobs,
          LLC, attorneys; Mr. Seijas, of counsel;
          Jessica V. Henry, on the briefs).

          Gerard J. Onorata argued the cause for
          respondent (Peckar & Abramson, PC, attorneys;
          Mr. Onorata and Patrick T. Murray on the
          brief).

PER CURIAM

Defendant East Brunswick Board of Education appeals from the April 24, 2015 order granting summary judgment on the unpaid portion of a Contract to plaintiff Wallace Bros. Inc.[1] The Board contracted with Wallace to provide general construction at the New Memorial School in East Brunswick (project). The total value of the contract was $18,233,000, plus any additional costs for unanticipated work. The Board paid Wallace $19,713,664.11. Although the school had been in use for two years, the Board did not make the last payment of $366,130.26. Wallace claimed the Board did not deliver a "final" punch list indicating additional work to be done until after the litigation ensued. The Board claims several punch lists were provided going as far back as April 2013. The parties dispute whether these punch lists were provided to Wallace.

The trial judge determined that the Board waited too long to register dissatisfaction with the completion of the project, and then belatedly provided a final punch list that was maintenance-related and substantively separate from the contract. We reverse the grant of summary judgment because material facts are in dispute and the Board is entitled to a trial on the issue of whether the

---

[1] Although the Board's appeal originally sought review of two orders, the appeal of the October 23, 2015 order granting delay damages was resolved by way of a stipulation of dismissal.

contract was fully completed and the last payment due in its entirety.[2]

The Board's architect signed two Certificates of Substantial Completion, one on November 9, 2012 and the second on October 3, 2013, both of which struck out the following language:

> A list of items to be completed or corrected is attached hereto. The failure to include any items on such list does not alter the responsibility of the Contractor to complete all Work in accordance with Contract Documents.

The meaning of the striking of this language is not clear. The architect certified that "the stricken language merely indicated, in my opinion, that the punch lists were not attached thereto." Wallace contends the architect's signature on the documents with the language stricken speaks for itself in indicating the project was completed.

The Board argues that the project was not completed in light of further punch lists. The Board contends that it served Wallace

---

[2] Wallace argues that we should not consider the Board's arguments not raised before the motion court. To the extent that these arguments constitute "issues" not raised below, we choose to consider them in the interest of justice, given that public funds are at stake. See Nieder v. Royal Indemn. Ins. Co., 62 N.J. 229, 234 (1973) (noting that although appellate courts ordinarily should not reach issues that were not presented below, an exception applies where the issues significantly affect the public interest).

a punch list in April 2013, well before litigation ensued in March 2014. The Board solicited price proposals from other contractors to repair and complete Wallace's work. Further, the Board's opposition to the last payment reflected about $56,000 of back charges[3] and approximately $170,000 in liens on the project. The contract requires Wallace to refund the lien amounts to the Board.

Although the evidence was conflicting, the motion judge determined that the Board did not submit a "final punch list" to Wallace until January 2015, and "[f]airness dictates that this punch list should be rejected as it was not submitted with the Certificates of Substantial Completion and the Project has been occupied for two years." The contract provides in paragraph 9.9.3 that "Partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents."

We review a grant of summary judgment de novo, applying the same standard governing the trial court under Rule 4:46-2(c). Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007). Generally, the court must "consider whether the

---

[3] A back charge is a "charge against a contract in the form of a credit change order to a contractor for the cost of having others perform portions of their contract." Back charge, DictionaryofConstruction.com, http://www.dictionaryofconstruction.com/definition/backcharge.html (last visited Oct. 24, 2017).

competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2(c).

The Board argues that the motion judge disregarded material disputes of fact. First, it argues that required "closeout documentation" remains missing, despite a contractual obligation to provide these documents prior to payment on the contract balance. The Board describes these documents as the proof of payment of all vendors, proof of insurance, subcontractor waivers, recorded drawings, proof of tests and inspections, and the maintenance package containing manufacturers' warranties.

The motion judge, referring to the Board, stated:

> When you let so much time go by and you're holding up their money and then you say, oh you got to do all these things and there's no way of telling — most of them look like maintenance things that would occur in the ordinary course of using the premises, but basically it sounds like you're holding their money hostage to make them come and do repairs that they would not have been called upon to do.

A "punch list status report" dated April 2013 lists close to three hundred items that had yet to be completed. The list reflects that it was revised in August 2013, October 2014 and November 2014, when some of the items were crossed off. The

architect refers to this list as the "Final Punch List." Examples from the list that were not crossed off include: caulking all exposed steel, removing "stub conduit," touching up paint on a door frame, repairing a damaged wall, installing the vinyl base at a casework counter, removing paint from an entry frame, installing a "backer rod," patching bolts at a side-court basket, sanding and painting "hose bibbs," replacing crumbling grout, and installing concrete floor sealer.

According to the November 2014 punch list, $163,890 worth of work remained. Also still outstanding was the Board architect's issuance of a "final Certificate for Payment stating that . . . the Work has been completed in accordance with . . . the Contract [and] the entire balance . . . is due and payable" as required in paragraph 9.10.1 of the contract. The contract requires "strict and entire conformity" by Wallace.

A trial court's legal interpretation of the meaning of a contract is subject to de novo appellate review. Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998). In Dunkin' Donuts of Am., Inc. v. Middleton Donut Corp., 100 N.J. 166 (1985), the trial court "fashioned its own remedy on the basis of equitable considerations," believing that the contract would result in an "inappropriate windfall." Ibid.

Our Supreme Court reversed, stating: "Equitable relief cannot be claimed because a contract is oppressive, improvident, or unprofitable, or because it produces hardship." Id. at 183-84. The contract does not require that the last payment be made within a set period of time. Material factual disputes remain regarding whether Wallace fully completed the contract.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION